Grace MACE, Appellant,

v.

Morris JUNG, Appellee.

No. 306.

Supreme Court of Alaska.

Nov. 6, 1963.

James K. Tallman, Anchorage, for appellant.

Daniel A. Moore and James J. Delaney, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Appellant brought this action for personal injuries and property damage arising out of an automobile collision. A jury returned a verdict for appellee, and appellant has appealed.

In connection with a pre-trial deposition taken by appellee, the lower court over appellant's objections ordered the production of certain records in the custody of the State Division of Welfare pertaining to appellant. The purpose of securing such records, as stated by appellee's counsel, was to show that the custody and care of appellant's three children had been assumed by the Welfare Division by reason of appellant's neglect, and that this information would have a direct bearing on appellant's mental pain and suffering allegedly resulting from the automobile accident. In the welfare records that were produced appellee discovered a statement by a policewoman, Margaret Cox, who had interrogated appellant at a hospital shortly following the accident in connection with a police investigation and report she was obliged to make regarding appellant's whereabouts the preceding twenty-four or thirty-six hours. Although the written report was not produced in evidence, Margaret Cox was called as a witness by appellee. Her testimony had a two-fold purpose: to impeach certain testimony given by appellant, and to show that appellant's injury (a spontaneous abortion) had been caused, not by the accident, but by her own neglect in failing to follow her doctor's instructions.

■ The action of the court in ordering the production of the welfare records was error, because it was in violation of a statute which explicitly forbids the disclosure of such records except for purposes directly connected with the administration of certain welfare programs.[1] Circumstances which would give rise to an exception to the statutory prohibition do not exist here. The purpose of examining the records was solely to provide a defense to appellee in appellant's suit against him, and was in no way directly connected with the administration of any welfare program, such as establishing eligibility, determining amounts of assistance, or providing welfare services.[2]

■ Appellee argues that the statute merely confers a privilege of nondisclosure of records upon the state agency, and since the agency did not claim the privilege there is no error in having the records produced in accordance with the court's order. We disagree. In unambiguous language the legislature has made disclosure of welfare records unlawful. It has left no room for the exercise of agency discretion to decide whether or not records not directly connected with the administration of welfare programs should be produced in compliance with a court order.[3]

Appellee next contends that no prejudice could have resulted to appellant because none of the records ordered to be produced were marked for identification as exhibits or introduced in evidence at the trial. By reason of the illegal disclosure of the records, the report of the policewoman, Margaret Cox, was discovered and inspected by appellee. Although not placed in evidence, this report obviously contained information which induced appellee to call Margaret Cox as a witness and have her testify as to the results of her investigation of appellant.

1. AS 47.05.030 provides:
"*Misuse of public assistance lists and records.*
"It is unlawful, except for purposes directly connected with the administration of general assistance, old age assistance, aid to the blind, or aid to dependent children, and in accordance with the regulations of the department, for a person to solicit, disclose, receive, make use of, or to authorize, knowingly permit, participate in, or acquiesce in the use of, a list of or names of, or information concerning, persons applying for or receiving the assistance directly or indirectly derived from the records, papers, files, or communications of the department or subdivisions or agencies of the department, or acquired in the course of the performance of official duties."

2. 7 Alaska Adm.Code § 5002, at 400 provides in part:
The use of all Public Assistance and Child Welfare information and records, including all lists of names and addresses, shall be limited to purposes *directly* connected with the administration of the Public Assistance and Child Welfare programs. Such purposes include establishing eligibility, determining amount of assistance, and providing services.

3. That this is the view of the agency itself is apparent from the following departmental regulations (7 Alaska Adm. Code, at 401):
5004. *Disclosure to Law Enforcement Officers.*
Public Assistance or Child Welfare information shall not be released to Federal, State [Territorial] or local law enforcement officers (such as District Attorneys, U. S. Marshals, local police officers) for purposes not directly connected with the administration of the Division of Welfare's [Department's] programs.
5005. *Right of Court to Subpoena Information.*
No person employed by the Department of Health and Welfare, Division of Welfare [Department of Public Welfare] in any capacity shall give testimony in Court or in a hearing of any nature, with respect to any person, record, file, paper or information connected with the administration of a Public Assistance or Child Welfare Service program, except where such information is revealed for purposes directly connected with the administration of the Division of Welfare's [Department's] programs, or where the applicant or recipient concerned has authorized the release of such information.

From reviewing her testimony in the context of everything else that took place at the trial, we cannot say that the jury may not have been influenced by that testimony to return a verdict in favor of appellee. Consequently, we believe that the error in ordering production of the records may well have been prejudicial and that a new trial must be had. In view of this conclusion, we find it unnecessary to pass upon appellant's other specifications of error.

The judgment is reversed and the case remanded for a new trial.