Alice Bell, Appellee, v. Bankers Life & Casualty Company, Appellant.

Gen. No. 43,478.

322

Heard in the second division of this court for the first district at the October term, 1945. Opinion filed December 18, 1945. Released for publication January 2, 1946.

McKinley & Price, of Chicago, for appellant; Paul E. Price and William McKinley, both of Chicago, of counsel.

Braden, Hall, Barnes & Blakey, of Chicago, for appellee; Zedrick T. Braden and Houston H. Hall, both of Chicago, of counsel.

Mr. Justice Sullivan delivered the opinion of the court.

Plaintiff, Alice Bell, was named beneficiary in a life insurance policy for $500 issued to her father, Frank Bell, by the defendant, Bankers Life & Casualty Company. After her father's death Alice Bell brought this action to recover the face amount of such policy. The case was tried by the court without a jury. The issues were found in favor of plaintiff and judgment was entered against defendant for $500. Defendant appeals.

The only controverted issue in this case is raised by the affirmative defense alleged in defendant's answer, which is in part as follows:

"Defendant admits that Alice Bell, plaintiff herein, was the beneficiary under said policy of insurance described in the Statement of Claim, and that proofs of loss have been filed and that a demand for payment of $500.00 was made, and admits that it refused to pay said amount, but denies that the said amount of

$500.00 is due to the plaintiff, and on the contrary avers that said policy of insurance, among other things provided: 'If the age of the insured be misstated, the amount payable hereunder shall be such as the premium paid would have purchased under this policy at the true age of the insured.'

"That in his application for said policy of insurance, dated December 29, 1941, the said Frank Bell represented and stated himself to be fifty-five years of age, and gave his birthday to be July 28, 1886; that his age at his nearest birthday was not fifty-five years as set forth in his application, but ninety-three years; and pursuant to the provisions of said age adjustment clause, above set forth, the amount payable under said policy of insurance would be such amount as the premium paid would have purchased if the true age of the insured had been given.

"That the amount of insurance the premium would have purchased at the true age of the insured, to-wit: ninety-three years, would have been $24.01, for which amount the defendant acknowledges liability, and tenders same in open court, and no more."

There is no substantial dispute as to the facts. On December 29, 1941 Frank Bell's written application for a policy of life insurance in the amount of $500 was presented to the defendant insurance company and he represented therein that he resided at 4939 South Parkway, Chicago, Illinois, and was born in Mississippi on July 28, 1886. If the insured was born on July 28, 1886 he would have been fifty-five years of age at the time of his application. Pursuant to said application the policy of life insurance involved herein was issued to Frank Bell without medical examination and the proceeds thereof were made payable to his daughter, Alice Bell, as beneficiary. As heretofore shown, the policy contained the following provision: "If the age of the insured be misstated, the amount

payable hereunder shall be such as the premium paid would have purchased under this policy at the true age of the insured.'' The insured died April 26, 1944 and proof of his death was duly filed with the defendant but the latter declined to pay the beneficiary the face amount of the policy on the ground that Frank Bell was not born on July 28, 1886, as stated in his application, but was born on May 25, 1849.

In order to prove the correct age of Frank Bell when he made his application for the issuance of the $500 policy, defendant produced as a witness the medical record clerk of the Cook County Hospital who brought into court the records of Frank Bell, who was admitted to that hospital on April 24, 1944. These records were kept in the usual course of business of the hospital and show that Frank Bell, residing at 4939 South Parkway and having a daughter, Alice Bell, was admitted to the hospital April 24, 1944 and died therein April 26, 1944. His age is stated in such records to be ninety-seven years. A record of the Cook County Bureau of Public Welfare pertaining to Frank Bell was produced in response to a subpoena and introduced in evidence by defendant. The cover sheet shows that the record so introduced relates to Frank Bell who resided at 4939 South Parkway and that he resided with his daughter, Alice Bell, at said address. This record also shows that on September 16, 1936 Frank Bell made a sworn written application for old age assistance, in which he represented that he was born on May 25, 1849 and that Alice Bell was his daughter. The closing entry of this record recites that Alice Bell, daughter of Frank Bell, 4939 South Parkway, informed the Bureau of Public Welfare of the death of her father on April 26, 1944, which is the date of death of the insured.

B. R. Nueske, an insurance actuary, testified that a man born May 25, 1849, who applied for a policy of

insurance on December 29, 1941 and paid a monthly premium of $2.90 (being the amount of premium paid by Frank Bell), would purchase $27.97 worth of insurance. All of the foregoing evidence of defendant was introduced over plaintiff's objection.

Plaintiff not only did not testify herself in rebuttal as to the correct age of her father when he applied for the issuance of the insurance policy in question but she made no attempt to refute defendant's evidence as to her father's correct age at that time.

■■ While it is true that initially plaintiff made out a *prima facie* case for recovery, her *prima facie* case was completely overcome by the evidence introduced by defendant, if such evidence was admissible and competent. We think that the records of the Cook County Hospital and of the Cook County Bureau of Public Welfare were unquestionably competent as evidence tending to show the correct age of the insured at the time he applied for the $500 policy of life insurance under Rule 70 of the Municipal Court of Chicago, which is as follows:

"Any writing of record, whether in the form of an entry in a book or otherwise, made as a memorandum of record of any act, transaction, occurrence, or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial Judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. Such finding may be based upon the testimony of any witness who is familiar with the regular course of the business at the time in question, without the necessity of producing the particular person who made the record or who furnished the information on which it was based. All other circumstances of the making of such writ-

ing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term business shall include business, profession, occupation and calling of every kind."

In Section 1462 of Wigmore's Code of Evidence, 3rd Edition (1942) it is stated that the foregoing rule is a substantial copy of the Federal Statute (sec. 695 of title 28, USCA) generally referred to as the "Business Entry Statute." In so far as we have been able to ascertain, Rule 70 has not heretofore been considered or construed by any court of review in this State but it seems to us that its language and intent are so plain and clear that it requires no construction. The obvious purpose of the adoption of Rule 70 was to liberalize the rules of evidence pertaining to the introduction in evidence of business records. There are numerous Federal decisions which have construed and applied the aforementioned business entry statute and held that records and their contents, such as were received in evidence here, were admissible and competent.

In *Pollack v. Metropolitan Life Ins. Co.*, 138 F. (2d) 123, an action was commenced by the beneficiary under a policy of life insurance. There was a clause in the policy in that case, as in the case at bar, which provided that if the age of the insured had been misstated the amount of the insurance payable shall be what the premiums paid would have purchased at the correct age. In his application for insurance the insured stated that he was born October 15, 1866 and at the trial the beneficiary claimed that to be the correct age. This was disputed by the insurer who offered evidence to prove that the insured had been born in the year 1862. There the court said at p. 128:

"Defendant offered into evidence records of the Memorial Hospital relating to the insured. These records disclose that the insured's age was 75 in November of 1936. These records were excluded. We think they should have been admitted under the business entry statute just discussed. The hospital records were apparently made when the insured went to the Memorial Hospital for diagnostic purposes. Part of the history stated therein was the insured's age and we think that that is part of the act, transaction or occurrence or event referred to in the statute. A patient's age is, as a matter of common knowledge, a relevant part of medical history and the record should be admissible under the statute as proof of the fact."

In *Metropolitan Life Ins. Co. v. Brown,* 45 F. Supp. 728, the court said at p. 730:

"From the evidence it is clear, and I find, that the insured misstated his age in his application for insurance; and that the defendant made a misrepresentation when she stated in the proof of death, sent by her to the plaintiff, that the insured's birth date was October 3, 1904.

"Much difficulty is encountered in determining the true age of the insured, in view of the conflicting records. However, the most persuasive of all the evidence is the petition for naturalization. This was the earliest of the records considered. From it the insured derived his status as a citizen of this country and all the rights incidental thereto. His statement there was made directly by the insured under oath; and the importance of the occasion as well as the probable knowledge of the possible consequences of falsification would be more conducive to accuracy than would be the case with regard to any of the other records. I find, therefore, that the date, February 13, 1893, appearing in the petition for naturalization es-

tablishes the date of the insured's birth. Compare *New York Life Insurance Co. v. Sikov*, 33 F. Supp. 115, 117."

To the same effect are *Ulm v. Moore-McCormack Lines, Inc.*, 117 F. (2d) 222; *Reed v. Order of United Commercial Travelers*, 123 F. (2d) 252.

While the foregoing authorities determined the admissibility and competency of the contents of records offered in evidence under the Federal business entry statute, we think that they apply with equal force to the competency of the contents of the records received in evidence in this case. Moreover, there is an additional reason why the records of the Cook County Bureau of Public Welfare constituted competent evidence. The Cook County Bureau of Public Welfare is charged with the duty of administering the Old Age Pension Act (par. 410, ch. 23 and par. 67e½ of ch. 34, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 18.164, 18.061(1)]). Under the Act the pension is given to persons who have attained the age of sixty-five years (par. 411, ch. 23 [18.165]) and who otherwise meet the requirements described in said par. 411 of ch. 23. Before granting a pension the Bureau of Public Welfare is required to satisfy itself that the age requirement of the statute has been met by the applicant. (Par. 411-¼, ch. 23.) Therefore, it must be unquestionably apparent that records compiled by the Bureau of Public Welfare in connection with the allowance or granting of a pension under the provisions of the Old Age Pension Act are such records as are required to show that the applicant has met the requirements of the Act.

It has been repeatedly held that records kept by persons in public office, which they are required either by statute or the nature of their office to maintain in connection with the performance of their official duties, are admissible in evidence and are evidence of those matters which are properly re-

quired to be maintained and recorded therein. (*Lane v. Bommelmann,* 17 Ill. 95; *Chicago & Northwestern R. Co. v. Trayes,* 17 Ill. App. 136, 140; *Merchants' Navigation Co. v. Amsden,* 25 Ill. App. 307; 32 C. J. S. sec. 644, p. 509.) Production in court by the custodian thereof is sufficient proof of the authenticity of the records. "The admissibility of public records depends upon custody and authenticity and is not governed by handwriting or the original entry rule." 32 C. J. S. sec. 643, p. 507. The official record of the Cook County Bureau of Public Welfare unmistakably shows that Frank Bell in order to obtain a pension made oath that he was born in Mississippi in 1849 and it will not be presumed that Bell in making his application under oath for the payment of the pension would do so with the fraudulent intent of obtaining a pension and violating the law.

There can be no question but that the records of the Cook County Hospital and of the Cook County Bureau of Public Welfare were properly received in evidence and that they showed that the person who was admitted to the hospital and who applied for an old age pension bore the identical name of the insured, that his place of residence was the same as that stated in his application for insurance and that he had a daughter bearing the same name as the plaintiff herein. This evidence in the absence of any evidence to the contrary proves without doubt that the Frank Bell mentioned in said records was the same Frank Bell who was named as the insured in the policy of insurance involved herein. It has been uniformly held in this State that in the absence of evidence to the contrary identity of name raises the presumption of identity of person. (*Clifford v. Pioneer Fire-Proofing Co.,* 232 Ill. 150; *Sharp v. Sharp,* 333 Ill. 267.) It is significant that in the face of the documentary evidence that Frank Bell was at least ninety-three years old when he applied for the insurance policy

that plaintiff did not see fit to offer any evidence in rebuttal, that she did not seek to show that the insured was not the same individual who was described in the aforesaid records as having been born in 1849 and that she did not produce any witnesses to testify as to the age or appearance of the decedent. In view of plaintiff's failure in this regard it may be fairly inferred that if such evidence existed she would have produced it. (*Mantonya v. Reilly*, 184 Ill. 183.)

Plaintiff insists that the records of the Cook County Bureau of Public Welfare were inadmissible because of the prohibition contained in par. 419, ch. 23, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 18.174], which provides as follows:

"Except for purposes directly connected with the administration of pensions, and in accordance with the rules and regulations of the Commission, no person shall solicit, disclose, receive, make use of, or authorize, knowingly permit, participate in, or acquiesce in the use of, any list of names of, or any information concerning, persons applying for or receiving pensions, directly or indirectly derived from the records, papers, files, or communications of the Commission or County Departments or acquired in the course of the performance of official duties. The violation of this provision is a misdemeanor."

This prohibition was clearly intended to forbid voluntary disclosures but it was never intended to prevent the disclosure of the contents of official documents pursuant to the compulsion of a subpoena where the contents of such documents are pertinent to a legal inquiry. (*Maryland Casualty Co. v. The Clintwood Bank*, 155 Va. 181, 154 S. E. 492; *Wilson v. United States*, 59 F. (2d) 390.)

It clearly appears from the undisputed evidence that the finding and judgment of the trial court are against the manifest weight of the evidence.

■ However, we think that under the circumstances of this case plaintiff is entitled to recover from defendant the premiums paid by her father during his lifetime rather than the $27.97 tendered to her by the defendant. It is true that the actuary testified that a man born on May 25, 1849, who applied for a policy of insurance on December 29, 1941 and paid a monthly premium of $2.90 as Bell did, would purchase only $27.97 worth of insurance but it is also true that defendant would not knowingly have insured a man ninety-three years old, because it is a matter of common knowledge that a man of that age is not an insurable risk. Contracts, including insurance contracts, are what the parties intended them to be and it certainly cannot be said that defendant intended to sell an insurance policy to a ninety-three-year old man, upon which policy his beneficiary would be only entitled to receive $27.97 after her father had paid a monthly premium of $2.90 for 28 months. It seems to us that it would be highly inequitable to permit the defendant to retain the premiums paid by Bell and we are constrained to hold that such premiums, amounting to $81.20, should be returned to plaintiff.

For the reasons stated herein the judgment of the municipal court of Chicago is reversed and judgment is entered here in favor of plaintiff and against defendant for $81.20.

*Reversed and judgment here.*

FRIEND, P. J., and SCANLAN, J., concur.